IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AMANDA ASBURY,

    Plaintiff,

v.               CIVIL ACTION NO. 2:23-cv-00499

BLACKHAWK MINING, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

   The Court has reviewed *Blackhawk Mining, LLC's Motion for Summary Judgment on Blackhawk Mining, LLC's Status as an Employer Under the WVHRA* (Document 38), *Blackhawk Mining, LLCs Memorandum in Support of Its Motion for Summary Judgment on Blackhawk Mining, LLC's Status as an Employer Under the WVHRA* (Document 39), *Blackhawk Mining, LLC's Motion for Summary Judgment* (Document 40), *Blackhawk Mining, LLC's Memorandum in Support of Its Motion for Summary Judgment* (Document 41), the *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Document 44) (addressing both motions), *Blackhawk Mining, LLC's Reply in Support of Its Motion for Summary Judgment on Blackhawk Mining, LLC's Status as an Employer Under the WVHRA* (Document 45), and *Blackhawk Mining, LLC's Reply in Support of Its Motion for Summary Judgment* (Document 46), as well as all exhibits.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   The Plaintiff, Amanda Asbury, initiated this action with a *Complaint* (Document 1-1) filed on November 30, 2022, in the Circuit Court of Boone County, West Virginia. She named several

companies as Defendants, and the cases were severed in state court prior to removal of this action on July 24, 2023. The named Defendant in this case is Blackhawk Mining, LLC.

Ms. Asbury has approximately 12 years of experience as a coal miner, with no record of misconduct or poor performance. The mine she worked at shut down and she was discharged on December 18, 2018, and sought employment at other mines. She had experience in a variety of positions, with a variety of equipment, and has certifications as an electrician Hi/Med/Low, underground coal miner, EMT-M, Mine Rescuer, Underground Instructor, and Electrical Instructor. (Asbury Resume) (Document 44-2). She applied for thirteen positions with Blackhawk Mining subsidiaries Rockwell Mining, LLC, Panther Creek Mining, LLC, and Kanawha Eagle between May 2019 and February 2022, completing applications on the Blackhawk Mining website for each open position.[1] The Blackhawk website listed "subsidiaries' names and what positions they have open." (Asbury Dep. at 92::19-20) (Document 44-1.) The application forms include Blackhawk Mining title line and/or a privacy policy that indicates consent to "the applicant tracking service being offered by Paycor on behalf of Blackhawk Mining LLC." (Asbury Applications) (Documents 40-1 – 40-3.) A line entitled "Job Location" lists the subsidiary and location of the mine offering the position. (*Id.*) Communications came from Blackhawk Human Resources, at the following email address: employment@blackhawkmining.com. (Documents 40-4 – 40-6.)

The positions Ms. Asbury applied for included prep plant technician, safety manager, plant technician, utility, prep plant floor walker/welder, technician warehouse, scoop operator, shuttle

---

[1] The Plaintiff acknowledges that the four positions she applied for between May 2019 and December 2019 are outside the statute of limitations, but contends that the Defendant's decision to hire less qualified men for those positions is evidence relevant to her claims that are not so barred.

car operator, move crew, electrician-section, plant electrician, and underground greaser. One position was not filled. The other twelve positions were filled exclusively with men, some with multiple men hired for the same position. Many of the men hired were less experienced than Ms. Asbury, including some with no prior mine experience at all, and HR and management personnel conceded that she was more qualified for certain positions than the male applicants who were hired. Some of the hiring personnel indicated that they preferred to hire inexperienced "red hat" miners for certain positions to train new employees in the industry, and would have considered Ms. Asbury overqualified for those roles. The personnel involved in hiring decisions testified that other considerations for hiring included drive time to the mine locations, prior employment with Blackhawk, recommendations from existing employees or managers, family connections, and specialized skills for some positions.

Ms. Asbury asserts that the Defendant failed to hire her, in whole or in part, based on her gender, in violation of the West Virginia Human Rights Act (WVHRA), W. Va. Code § 5-11-9. She seeks lost wages, emotional damages, punitive damages, and attorney fees and costs.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v.*

3

*Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986)). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient

to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

### A. Status as an Employer

Blackhawk Mining contends that it is entitled to summary judgment because it does not legally qualify as an employer for purposes of the WVHRA. It asserts that its subsidiaries operate independently of one another, and Blackhawk Mining has no employees. Because the WVHRA applies only to those entities that employ 12 or more people within the state, Blackhawk argues that the Plaintiff's claim must fail. It emphasizes that it asserted this defense early in the litigation, yet the Plaintiff did not amend to name the subsidiary companies. Blackhawk supplied its discovery responses asserting that it was not the proper Defendant, as well as an affidavit (attached to its reply brief) by Colin Milam, Vice President of Human Resources for Pine Branch Mining, LLC "with responsibilities of Blackhawk Mining, LLC's subsidiary companies." (Milam Aff. at ¶ 2.) Mr. Milam asserts that "Blackhawk Mining, LLC has no employees as it operates solely as an operational identity for various subsidiaries." (*Id.* at ¶ 4.)

The Plaintiff asserts that Blackhawk Mining, as the parent company of Kanawha Eagle and Panther Creek, was the employer making hiring decisions, and any questions in that regard should be determined by the jury. She notes that she applied for the positions on Blackhawk Mining's website, and various management employees who were deposed described themselves as working at Blackhawk or being Blackhawk employees.

5

The version of the WVHRA in effect at the time of Ms. Asbury's applications provides that "[i]t shall be an unlawful discriminatory practice…for any employer to discriminate against an individual with respect to…hir[ing]…." W. Va. Code § 5-11-9(1). An "employer" must employ "twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year." W. Va. Code § 5-11-3(d). Judge Copenhaver recently summarized precedent from the West Virginia Supreme Court of Appeals to conclude that the "West Virginia Supreme Court of Appeals is…amenable to the proposition that multiple entities may be considered employers under the [WVHRA] but has not provided guidance as to how that determination is to be made." *Allen v. Stephens*, No. 2:22-CV-00388, 2024 WL 1204098, at *24 (S.D.W. Va. Mar. 20, 2024).

The West Virginia Supreme Court of Appeals has "repeatedly held that [it] will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." *Hanlon v. Chambers*, 464 S.E.2d 741, 754 (W. Va. 1995). Federal precedent provides two analytical frameworks that may have bearing on whether Blackhawk may legally be considered an "employer" for purposes of the WVHRA: the joint employer doctrine and the integrated employer doctrine. The Fourth Circuit has adopted a multi-factor test for courts considering "whether an individual is jointly employed by two or more entities:"

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;

6

> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414–15 (4th Cir. 2015) (noting that "control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers").

In *Butler*, the Fourth Circuit distinguished joint employment from the "single employer or integrated employer doctrine, in which a parent company and its subsidiary can be considered a single employer for purposes of Title VII liability." *Id.* at fn. 3 (internal quotation marks and punctuation omitted). "In determining whether to treat the parent and subsidiary as an integrated employer, courts look at factors including: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 545 (E.D. Va. 2022) (internal punctuation omitted) (citing and quoting *Meyer v. Qualex, Inc.*, 388 F. Supp. 2d 630, 635 (E.D.N.C. 2005) and *Hukill v. Auto Care, Inc.*, 192 F. 3d 437, 442) (4th Cir. 1999)).

Blackhawk's evidence that it does not constitute an employer consists entirely of its own statements in discovery, and an affidavit submitted with its reply brief stating that it does not have employees. The Plaintiff has presented evidence that employees, including HR and management

7

personnel, described themselves as Blackhawk employees, that hiring was conducted through the Blackhawk website, and that communications appeared to be from Blackhawk, rather than its subsidiaries. The record does not appear to be well-developed on this question, and neither party supplied briefing with significant factual or legal analysis. The Court finds that Blackhawk's conclusory statements that it is not the employer are not sufficient to establish that it is entitled to judgment as a matter of law on the issue.

### B. Merits

Blackhawk next argues that it is entitled to summary judgment on the merits. Blackhawk concedes that the Plaintiff was a member of a protected class based on her gender, and that she suffered an adverse employment action in not being hired. It contends that she cannot prove that the failure to hire her was due to her gender or that the non-discriminatory reasons put forth are pretextual. It notes that "females make up an extremely small percentage of applicants" and that "over 60 women are currently employed throughout Blackhawk Mining's subsidiaries." (Def.'s Mem. at 8) (Document 41.) It asserts that "[e]ach of the individuals hired instead of Plaintiff had (1) more experience for the positions they were hired for, (2) knew management employees and/or were recommended to apply by management, (3) applied and were hired prior to Plaintiff applying for the respective positions, (4) lived closer to the mine than Plaintiff, or (5) were already working on Blackhawk Mining's properties and were hired through the Red Hat Program." (*Id.* at 9-10.) Blackhawk argues that the Plaintiff has not provided "any evidence that refut[es] the proffered explanation for each position." (Def.'s Rep. at 4) (Document 46.)

The Plaintiff argues that she has put forth sufficient evidence of gender discrimination. She contends that she has made a prima facie case and created an inference of discrimination based

8

on the fact that the Defendant hired 28 male employees for the nine positions at issue, and she had more mining experience than at least 21 of those men. She argues that a jury could find the alleged non-discriminatory reasons pretextual, citing evidence that Blackhawk had employees who lived farther from mines than she did and that her qualifications were superior to many of the men hired.

The analysis for employment discrimination cases under the WVHRA follows the same burden-shifting framework laid out in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) for analysis of federal claims brought under Title VII of the Civil Rights Act of 1964. *Hall v. Gestamp W. Virginia, LLC*, No. 2:20-CV-00146, 2021 WL 3552222, at *4 (S.D.W. Va. Aug. 11, 2021) (Copenhaver, S.J.), *appeal dismissed*, No. 21-1995, 2022 WL 726965 (4th Cir. Jan. 3, 2022). The plaintiff must first make a prima facie case: "(1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 1, *Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 190 (W. Va. 2016). "The 'but for' test of discriminatory motive is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." *Id.* at Syl. Pt. 2 (internal citation omitted).

After a plaintiff alleging employment discrimination establishes a prima facie case, the burden "shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions." *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 582 (W. Va. 1996). If it does so, the burden shifts back to the plaintiff to "prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action." *Id.* The Plaintiff may satisfy this burden "either through a pretext analysis where plaintiff presents evidence that the employer's

9

proffered reason for the discharge is merely a pretext for the discriminatory act, or a mixed motives analysis by showing that, although not pretextual, a discriminatory motive nonetheless played a significant part in the employer's adverse decision." *Allen v. Stephens*, No. 2:22-CV-00388, 2024 WL 1204098, at *22–23 (S.D.W. Va. Mar. 20, 2024) (Copenhaver, S.J.)

The Plaintiff has presented evidence that she applied for nine positions (and another four that are outside the statute of limitations), for which she was qualified, and Blackhawk hired men for each position. She has presented evidence that she was more experienced and had more relevant certifications than the men actually hired for several positions. That is sufficient to make a prima facie case for gender discrimination. The Defendant presented evidence of non-discriminatory reasons for its decisions, including the timing of the applications, the drive time between the Plaintiff's home and the mine(s), the fit between her experience and some of the positions, and the other applicants' relationships with management employees. The Plaintiff cites her superior qualifications, as well as evidence that the Defendant hired other employees with similar or longer drive times, to support her argument that a jury could find those reasons pretextual.

The Court finds that factual issues requiring credibility determinations preclude summary judgment. In addition to the number of positions Ms. Asbury applied to and was rejected for, in favor of male applicants, a jury could infer discrimination from the extremely small number of women employed in operations. Blackhawk's Vice President of Human Resources indicated that "company-wide there's approximately 60 or so female employees, but they're not all in operations." (C. Milam Dep. at 23::10-12) (Document 40-20.) He estimated that there are "[p]robably 10 or 12" women, out of approximately *1700* employees in operations – less than 1%.

(*Id.* at 23::20-24.)  A reasonable jury could disbelieve the series of explanations offered by the Defendant.  For example, some hiring personnel indicated that they were concerned when applicants had a long drive because it increased the risk of turnover, and they would want to discuss the issue with applicants to explore whether they intended to move closer.  But Ms. Asbury was rejected without interviews.  Only the fact finder can determine what weight to give the testimony of Blackhawk's agents with regard to the proffered legitimate reasons for their decisions not to hire Ms. Asbury.  Therefore, the Defendant's motion for summary judgment should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Blackhawk Mining, LLC's Motion for Summary Judgment on Blackhawk Mining, LLC's Status as an Employer Under the WVHRA* (Document 38) and *Blackhawk Mining, LLC's Motion for Summary Judgment* (Document 40) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   September 12, 2024

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

11